IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JIMMIE LEE GREEN, JR., | ) |
| Plaintiff, | ) |
| v. | ) CV 314-150 |
| BRAD HOOKS, Warden, Johnson State Prison; CHERIE PRICE, Deputy Warden, Johnson State Prison; FORREST LESTER, Chaplain, Johnson State Prison; and JOHNSON STATE PRISON, | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Johnson State Prison ("JSP") in Wrightsville, Georgia, is proceeding *in forma pauperis* in this case filed pursuant to 42 U.S.C. § 1983. He originally filed the case in the Middle District of Georgia, but the proceedings were subsequently transferred after United States District Judge C. Ashley Royal dismissed all claims against Defendants located in the Middle District and determined that all other claims arise from events which Plaintiff alleges occurred in this District. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006).

**I. BACKGROUND**

Plaintiff names the following Defendants: (1) Brad Hooks, Warden at JSP; (2) Cherie Price, Deputy Warden at JSP; (3) Forrest Lester, Chaplain at JSP; and (4) JSP. (See doc. no. 1, pp. 1, 3.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of

the present screening, and based on the findings in Judge Royal's transfer order, the facts are as follows.

Plaintiff is a "Hebrew Israelite" who is unable to have worship services at JSP. When a fellow inmate at JSP spoke with Defendant Lester about holding services, he was told that the "Hebrew Israelite Community at Johnson State Prison had to mirror the Jewish Community at Autry State Prison." (Doc. no. 1, p. 4.) When the fellow inmate again asked Defendant Lester on November 4, 2014, as well as Defendant Price, about having a worship service, he was told that the Hebrew Israelites could not conduct a worship service because the Jewish Community at Autry State Prison did not need a worship service. (Id.) Plaintiff then also asked Defendant Lester about why the Hebrew Israelites could not have a worship service, but he received no answer. (Id. at 4-5.) Plaintiff turned in a grievance about the matter on November 5, 2014 and again on November 13, 2014, but he "never got a receipt for the grievances." (Id. at 2.)

## II. DISMISSAL FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A. The Exhaustion Requirement of the Prison Litigation Reform Act ("PLRA").

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).[1] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

## B. The Prison Grievance Procedure.

Because of the date of the events about which Plaintiff complains, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on December 10, 2012. Inmates are encouraged to resolve complaints on an informal basis before

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 537-38 (7th Cir. 1999).

filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. Id. § VI(D)(1)-(5). Once the Counselor gives the grievances to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. Id. § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint. Id. § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. Id. § VI(D)(7).

The inmate then has seven calendar days from the date he receives the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause. Id. § VI(E)(2). If the Original Grievance is rejected, or if the time allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal. Id. §§ VI(E)(3)-(4). The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Id. § VI(E)(7).

### C. Plaintiff's Failure to Exhaust.

Here, Plaintiff states that he turned in two grievances, one on November 5, 2014, and one on November 13, 2014. (Doc. no. 1, p. 2.) Although Plaintiff states he "never got a receipt for the grievances," he does not allege that the counselors refused to accept the grievances or that he otherwise was told that his grievances would not be processed in accordance with the SOP described in Part II.B, *supra*. Indeed, he included the affidavit of a fellow inmate attesting to the fact that two different counselors accepted the grievances from Plaintiff on November 5th and 13th, respectively. (Id. at 8.) The SOP allows for a forty-day response period from the time of submission of the original grievance. SOP IIB05-0001 § VI(D)(7). Plaintiff signed his complaint on November 24, 2014, less than twenty days after submission of the first grievance and only eleven days after submission of his second grievance. (See doc. no. 1, pp. 2, 6.)

Moreover, even if his original grievances had been rejected or the time for the Warden's response had passed, Plaintiff does not state that he appealed to the Central Office, as is permitted when an original grievance is rejected or the time for receiving a response has expired without the offender receiving a response. SOP IIB05-0001 §§ VI(E)(3)-(4). In order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Additionally, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of his complaint that Plaintiff failed to use all steps of the available grievance process prior to submitting the current complaint.[2] Therefore his complaint fails to state a claim upon which

---

[2]Exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215 (2007). Dismissal is nonetheless appropriate where, as here, the complaint allegations show that a prisoner's claims are barred by an affirmative defense. Id. at 14; see also Clark v. Georgia Pardons and Paroles Bd., 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would

relief can be granted. See Solliday v. Federal Officers, 413 F. App'x 206, 208 (11th Cir. 2011) ("A claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").

## III. CONCLUSION

For the reasons set forth above, Plaintiff's complaint fails to state a claim upon which relief can be granted. Therefore, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 17th day of December, 2014, at Augusta, Georgia.

/s/ Brian K. Epps
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

defeat the action"); Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (finding that the district court properly dismissed complaint because the allegations in the complaint sufficed to establish that the plaintiff failed to exhaust his administrative remedies).